OPINION. HarRon, Judge-. Having heard further evidence in this proceeding and having before us a record which contains evidence which ivas lacking in the original record, it is necessary to make entirely new findings of fact, and with new findings of fact it is necessary to reconsider the question. The only question to be decided is whether petitioner is entitled to deduct $65,000 as an ordinary and necessary business expense incurred in carrying on its business within the provisions. of section 23 (a) (1) of the Internal Revenue Code. Petitioner has the burden of proving that the expense comes within the statutory provision. There must be proof that the expense was incurred in the conduct of petitioner’s business, and that it was both ordinary and necessary. Welch v. TIelvering, 290 U. S. 111. It is apparent that there was dissension between a group of stockholders of Rockville Centre Corporation and the Levitts. Petitioner’s witnesses testified that Edelman’s claim was without merit and was made under such circumstances that it amounted to a “holdup” directed at petitioner only. On the other hand, respondent has introduced evidence which shows clearly that Edelman’s claim was for an accounting of the assets of Rockville and that it was made against others besides petitioner. The evidence strongly indicates that if any suit had been instituted by Edelman it would have been against Abraham Levitt, William J. Levitt, Abraham Levitt & Sons, Inc. (if still in existence), and others, and that petitioner would have been joined in the action only as a transferee of the Levitts, as individuals, and/or of Abraham Levitt & Sons, Inc., with respect to Rockville’s former assets. Petitioner has the burden of proving its contention that the expenditure in question was an ordinary and necessary business expense. Petitioner’s evidence is limited. Petitioner offered only testimony of witnesses, and their testimony does not relate to the negotiations preceding the final settlement, or to the broad settlement, which respondent’s evidence shows encompassed more than a cash payment by petitioner. Respondent’s evidence, consisting of the agreements ■which were executed in the closing of the dispute, shows that a great deal more was involved in the settlement than petitioner would have us understand from its evidence. Some of respondent’s evidence consists of documents which were executed in the settlement. Petitioner, at the trial, did not deny that these agreements and documents were executed and were part of a broad settlement, nor did petitioner cross-examine respondent’s witness regarding these documents. Under such circumstances, they must be considered as evidence of what the setttlement involved. And they emphasize the narrow area which petitioner’s evidence covers. The evidence presented by petitioner is unsatisfactory in many respects, and part of it is unconvincing. For example: Petitioner’s evidence does not show clearly against what persons, corporations, and property the claim of Edelman was directed. The implication of petitioner’s evidence is that Edelman, acting for himself and other stockholders of Rockville, directed his claim against petitioner primarily, if not solely, for no reason other than to stage a “shakedown” at a time when petitioner was prosperous and when its affairs were at such a crucial point that petitioner could do nothing except to pay a ransom. Thus, Abraham Levitt, whose testimony was brief, testified that there was never any demand made upon him by Edelman “in any shape, manner or form.” His testimony is understood to mean that no demand was made upon him by any of Rockville’s stockholders at any time in 1938 or in 1939, during the period when Edelman made the demands which gave rise to the issue here. But when this proceeding came on for further hearing respondent called Edelman’s attorney as a witness and introduced evidence relating to the entire settlement made with Edelman, all of which evidence shows clearly that demands were made by Edelman upon Abraham Levitt. Petitioner’s evidence carries the implication that Edelman’s claims were satisfied solely by petitioner’s payment of $65,000. Petitioner did not offer in evidence the agreement of December 20, 1939, pursuant to which it agreed to pay $65,000, nor the earlier agreement of March 23, 1939, which referred to payment of the same amount. Respondent has introduced those agreements in evidence, as well as about twenty other documents which relate to the settlement. All of this evidence rebuts the inference of petitioner’s evidence that Edel-man made claims against petitioner only and that the only consideration which he received from petitioner was $65,000, and that the only consideration he received in the entire settlement of his claim was the .$65,000. Petitioner did not attempt to prove that the various agreements, most of which are attached to respondent’s Exhibit G, were not in fact executed by Abraham Levitt, William Levitt, and other persons, and by corporations other than petitioner, or that the terms of such agreements were not carried out. Petitioner made a general objection to the receipt of any additional evidence, to all of respondent’s evidence, upon the ground that further proceedings pursuant to the Circuit Court’s mandate should not involve the receipt of any additional evidence. However, in its supplemental brief petitioner does not challenge the authenticity of the documents attached to Exhibit G, but, preserving the general objection, petitioner states that it is willing “to assume, for purposes of argument, that the testimony and exhibits have been properly admitted in evidence.” The evidence shows that negotiations among the parties extended over many months in 1939 and that finally several adjustments were made whereby the dissatisfied stockholders of Rockville, who were also stockholders of Babylon, came out of the controversy in complete ownership of Babylon, and that the financial position of Babylon was changed and, apparently, improved. Edelman and his associates stepped out of Rockville by surrendering their stock. The settlement involved, primarily, adjustments of the assets and liabilities of Babylon. The question whether petitioner’s contribution of $65,000 in the entire settlement was a business expense of petitioner can not be decided fairly and correctly without giving consideration to the entire settlement, including all of the consideration which Edelman and his associates received. When all of the evidence is carefully considered, petitioner’s argument that Edelman was simply conspiring to put petitioner “over a barrel” and shake tlie change out of its corporate pockets is not convincing. Petitioner claims a deduction for a business expense. It is necessary for petitioner to show as clearly as possible for what it expended the sum in question, or, if that is not possible, why it made the expenditure. It has been stipulated that petitioner had agreed to pay the liabilities and obligations of the corporations which transferred their assets to petitioner in 1938. One of the corporations was Abraham Levitt & Sons, Inc., which we shall refer to as the Abraham Levitt corporation. Edelman was complaining about transfers of property from Rockville to the Abraham Levitt corporation, and, as far as we can observe from the evidence, the chief reason for lodging a claim against petitioner was that petitioner was said to be a transferee of the Abraham Levitt corporation’s assets, or of the Levitts, individually. Edelman sought to recover property which had been transferred to the Levitt partnership, the Abraham Levitt corporation, and to any other corporation or persons, or to obtain consideration for such property. It is to be assumed that the Levitts did not admit that there were any improprieties committed in Abraham Levitt’s management of Rockville and in the transactions between Rockville and the partnership and the Abraham Levitt corporation, but it appears to be true that Abraham Levitt deeded certain lands to Edelman and gave other considerations in the settlement. Thus, Edelman appears to have succeeded in recovering both property and money, as he set out to do. In this settlement, petitioner did not surrender any of the property which had come to it, which had been owned by Rock-ville, but petitioner did pay out $65,000. We can not assume that this payment had no relation whatever to two stipulated facts, which are, that petitioner was obligated to pay the liabilities of Abraham Levitt & Sons, Inc., and that it had received property and proceeds from property formerly owned by Rockville. If the payment of $65,000 by petitioner had no relation to those stipulated facts, petitioner should have and could have made the real facts clear. There was surely a' time prior to the closing of the dispute when Abraham Levitt discussed with the president of petitioner, his son, what arrangements he was making with Edelman, how much cash was required in the settlement, and who should pay the cash, and why. There was just as surely a time in the negotiations when Edelman discussed how much or how little cash would be satisfactory to him in the entire settlement, and what other consideration he would require. We do not believe that no reason was declared by Edelman for requiting the payment of some cash, nor that, as between petitioner and Abraham Levitt, there was no reason why petitioner was to contribute cash to the settlement rather than Abraham Levitt, who, apparently, was willing to do other things, and purportedly did. Petitioner has not produced evidence relating to these pertinent questions. Instead, petitioner'drew a curtain over the scenes of the negotiations and produced only the testimony of its president and accountant to the effect that they believed it to be to petitioner’s best interests to pay $65,000 and thereby avoid litigation. Respondent’s evidence compels us to conclude that petitioner was fully aware of the entire settlement and of the contributions which Abraham Levitt made to the settlement. It would be unreasonable to believe that petitioner made its contribution blindfolded, or that the cash payment by petitioner was separate and apart from the other parts of the settlement. Upon all of the evidence, we find unconvincing petitioner’s argument that it paid the sum in question only to avoid the embarrassment and expense of being a party to litigation such as Edelman threatened to institute. Petitioner’s argument places an interpretation upon the expenditure and the circumstances attending the agreement to make the payment which is not supported by the evidence. The testimony given for petitioner in support of its contention that the expenditure was made only to avoid a lawsuit founded upon a claim without any legal merit, and to preserve its credit, good will, and business, can be given little weight in view of the general evidence. The testimony is, in part, prejudiced.[6] Also, it is misleading, in that it does not tell the whole story about the settlement which was made. After careful consideration of all of the evidence, it must be concluded that petitioner paid the $65,000 either in payment of a liability of Abraham Levitt & Sons, Inc., or to discharge obligations of Abraham Levitt. In either event, the payment can not be held to be an ordinary business expense of petitioner. The payment was either a part of the cost of the assets which petitioner acquired from Abraham Levitt & Sons, Inc., and, therefore, a capital expenditure; Athol Mfg. Co. v. Commissioner, 54 Fed. (2d) 230, affirming 22 B. T. A. 105; Caldwell & Co. v. Commissioner, 65 Fed. (2d) 1012, affirming 26 B. T. A. 790; Watab Pager Co., 27 B. T. A. 488; F. S. Stimson Corporation, 38 B. T. A. 303; Brown Fence & Wire Co., 46 B. T. A. 344; or it was a distribution to a stockholder, Abraham Levitt. See F. S. Stimson Corporation, supra. We think that the most reasonable view to take of the expenditure, on the entire evidence, is that petitioner made the payment as a transferee of the assets of Abraham Levitt & Sons, Inc., in payment of a liability of that corporation, and that, therefore, the expenditure constitutes part of the cost of petitioner’s original assets, and is a capital expenditure. There is a further reason for holding that the expenditure is not deductible as a business expense. We understand that there is the statutory requirement that an expenditure, to be a business expense, must be paid or incurred in .carrying on the taxpayer’s business. In Hales-Mullaly, Inc., 46 B. T. A. 25, 34, we said: “Moreover, we think it is also material, and incumbent upon petitioner to show, that the suit resulted, at least in part, from some action of the corporation either in, or incidental to, its ordinary business.” The evidence shows that the controversy which was settled in December 1939 was between stockholders of Rockville over transactions between Rockville and business entities other than petitioner which were consummated prior to the incorporation of petitioner. The evidence strongly indicates that petitioner was drawn into the controversy only as an alleged transferee of property formerly owned by Rockville, which was transferred to petitioner, presumably, by Abraham Levitt & Sons, Inc. The evidence strongly indicates that the settlement was a settlement made primarily by Abraham Levitt with other stockholders of Babylon and Rockville, and that petitioner was a party to the settlement, again, because it was a transferee of Abraham Levitt & Sons, Inc. Upon all of the evidence, it must be concluded that the controversy did not arise out of any transaction of petitioner in or incidental to its ordinary business. In our opinion, the result to be reached in this case should be the same as in the Hales-Mullaly case, which we consider is controlling here. We have reviewed many cases where an expenditure made by a taxpayer to settle a lawsuit, or to avoid difficult consequences, or to compromise claims has been held to be a deductible business expense. Among such cases we find the following: Kornhauser v. United States, 276 U. S. 145; First National Bank of Skowhegan, 35 B. T. A. 876; Edward J. Miller, 37 B. T. A. 830; Robert Gaylord, Inc., 41 B. T. A. 1119; Helvering v. Community Bond & Mortgage Corporation, 74 Fed. (2d) 727; International Shoe Co., 38 B. T. A. 81; Dunn & McCarthy v. Commissioner, 139 Fed. (2d) 242. The element which is common to all of the above cases, but which is lacking in this proceeding, is that in each case an expense was paid or incurred in a transaction which grew out of some business transaction of the taxpayer in the conduct of its business, or was made primarily to preserve existing business, reputation, and good will. In our opinion, the question in this proceeding does not come within the ambit of any of the above cases because the expenditure in question was not made in the conduct of petitioner’s ordinary business. It is held that the expense in question was not an ordinary business expense. Petitioner has failed to overcome the frima facie correctness of respondent’s determination, and respondent is sustained. We have made the findings we were directed to make by the Circuit Court under its questions one and two.[7] With respect to question three, a finding of fact has been made which relates to that question. A finding has been made to the effect, in general, that petitioner’s payment had some relation to the agreements made by Abraham Levitt, and that the amount of $65,000 had some relation to the total consideration received by Edelman in the entire settlement. This finding is based upon respondent’s evidence, which was not seriously questioned or denied by petitioner. We are obliged to express the view that we believe that the testimony of petitioner’s witnesses to the effect that the sum in question was paid for no other reason than to obtain releases and a settlement of the threatened litigation is not entirely accurate, and that it does not reveal all of the reasons that entered into petitioner’s agreement to contribute $65,000 to the settlement. The testimony for petitioner is that the amount was arrived at by a process of “bargaining.” We believe that is true, but that the bargaining involved the agreements of Abraham Levitt and the arrangements affecting Babylon Harbor, Inc., as well as the payment of cash by petitioner. We have endeavored to make some finding of fact under question three which would come closer to the type of answer which the question requires, but that is impossible because of the new evidence which has been received. There is no evidence relating to anj? estimate in dollars of the costs of defending the threatened litigation or of the costs of the damages which petitioner’s officers and directors feared. We believe that the amount which a “reasonable person” standing in petitioner’s position would have thought should be paid in cash in working out the settlement would depend upon the knowledge which the “reasonable man” had of all of the negotiations and all of the consideration which was to pass in the entire settlement. We have considered the question, and complied with the Circuit Court’s direction to us, as far as can be done. Petitioner objected to the receipt of additional evidence in this case. Petitioner has not cited any authority to support its general objection that it was improper to receive further evidence, and it appears that petitioner has abandoned the general objection. Further evidence was received for the purpose of enabling this Court to make findings of fact upon certain questions, as we were directed to do by the Circuit Court. It is the statutory duty of this Court to make findings of fact in the proceedings before us. Sec. 907 (b), Revenue Act of 1926, as amended by sec. 601, Revenue Act of 1928; Diller v. Commissioner, 91 Fed. (2d) 194, and cases cited. It is our understanding that the admission of additional evidence after a cause is remanded is a matter resting within our discretion, and, also, that after reversal of the decision which has been reviewed by the Circuit Court and the remandment of the cause for further proceedings not inconsistent with the Circuit Court’s opinion, our duty to act upon die petition for redetermination of the respondent’s determination is not different from what it was before the erroneous decision was rendered. Swenson v. Commissioner, 69 Fed. (2d) 280, 281. The Circuit Court did not expressly remand this cause to this Court to take further evidence, but, in remanding the cause to us to make further findings of fact, we understand that the Circuit Court has left it to our discretion whether or not additional evidence should be received. Cf. Belridge Oil Co. v. Helvering, 69 Fed. (2d) 432, 433; Kelleher v. Commissioner, 94 Fed. (2d) 294, 296; cf. Peavy-Byrnes Lumber Co. v. Commissioner, 86 Fed. (2d) 234, 235. The Circuit Court held that the expenditure in question is not deductible as a loss. That decision is now the law of the case. The Circuit Court did not make a decision upon the question whether the expenditure is deductible as a business expense under section 23 (a)(1), and so upon that question there is no established law of the case. The Circuit Court expressed the view that payments to protect a business “generally” are ordinary expenses. We do not understand that the court concluded and held that in this case the particular expenditure was “ordinary.” The court did not decide that the expenditure was “necessary.” The expenditure must be both ordinary and necessary. Welch v. Helvering, supra. This question, being left undecided by the Circuit Court on the appeal from our former decision, must be reconsidered and decided by this Court under the remand, and we have reconsidered and decided the question. Decision will be entered for the respondent. Berlin, petitioner’s principal witness and accountant, was asked and answered as follows: Q. Did you know the facts on both sides, from the Levitt interest and the Edelman interests? A. Well, I am prejudiced as far as the other interests were concerned, Edelman and his associates, because I felt it was merely a matter of holding somebody up who had plenty. The record in this proceeding does not support a finding of fact that petitioner’s officers “were not in the least troubled as to the possible success of the suit.” Petitioner’s president testified under a deposition that he went on “the theory that you can lose any kind of a case” (p. 16 of the deposition), and Gustave Simons, petitioner’s attorney, testified that he could not guarantee that Edelman would not succeed eventually “because there have been similar cases that were very much like that where very competent counsel have been very much surprised on both sides” (p. 88 transcript of original hearing). The additional evidence received at the hearing under the mandate shows that petitioner and Abraham and William Levitt had agreed to pay Edelman $65,000 on March 23, 1939. Thereafter, other considerations appear to have reopened the negotiations, and finally on November 10, 1939, Edelman’s attorney advised petitioner that he had “patiently negotiated the matter” and that unless it could be “amicably disposed of” and the damage claims of his clients satisfied, an action in equity would be commenced. Upon the entire record it has been found that petitioner was not entirely confident that any suit which Edelman might bring could not succeed.